*Opinion of the Court*

**UNITED STATES, Appellee,**

v.

**Michael E. PUGH, Airman First Class, U.S. Air Force, Appellant.**

No. 59,762.
ACM S27627.

U.S. Court of Military Appeals.

April 28, 1989.

*Captain Laurence M. Soybel* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi,* for appellant.

*Captain Joseph V. Treanor, III* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief); *Major Kathryn I. Taylor* and *Captain Bruce S. Ambrose,* for appellee.

COX, Judge:

Appellant (a Nuclear Weapons Specialist) and a fellow airman decided to play a practical joke on a friend, a security policeman who was guarding the Entry Control Point at a Weapons Storage Facility in Europe. Toward that end, they manufactured a fake bomb out of putty which resembled a plastic explosive. The putty was rigged with a battery that was secured in place by safety wire. Aluminum foil was used "to simulate a detonator." When it was completed, the mock bomb was placed on an outside window ledge of the place where the victim of this hoax was on duty. Appellant called the victim on an intercom and directed his attention to the window ledge. The victim saw the device and asked appellant who had put it there. From that point on, appellant's and the victim's versions of what happened differ. In any event, the "duress button" was pushed, an alarm was sent forward to Central Security, and an alert was activated up to the major command.

Appellant contends that immediately after he persuaded the victim to look at the device, he attempted to convey that it was a joke but was unable to do so because the victim hung up the intercom. On the other hand, the victim testified that he asked appellant several times if the bomb was a joke and whether appellant and his friend had put it on the ledge; however, appellant would not admit that the device was not a real bomb. Eventually (35–40 minutes according to the victim; 25 minutes according to other witnesses), a K–9 law enforcement dog and its handler arrived and determined that the device was not a bomb.

There is no serious dispute that appellant and his friend set out to play a practical joke on this security policeman. Indeed, there was no effort to be secretive about the construction of the device. Several persons had seen them assembling the device and had made comments about it. Ad-

ditionally, appellant's reputation within the command was that he was a practical joker. Thus, he contends that his conduct lacked the requisite malicious intent required to constitute a violation of the Uniform Code of Military Justice.

Appellant was charged with violating Article 134, UCMJ, 10 USC § 934, in that he

did, at or near Hahn Air Base, Federal Republic of Germany, on or about 24 June 1987, maliciously convey certain information concerning an attempt being made or to be made to unlawfully damage the Entry Control Point of the Weapons Storage Area by means of an explosive, to wit: a bomb, which information was false and ... [known] to be false.

Appellant was found guilty by a special court-martial of officer members. He was sentenced to reduction to the lowest enlisted grade (E–1) and a bad-conduct discharge. We granted review to determine if the evidence presented was sufficient to sustain his conviction.[1]

The United States Court of Military Appeals determines legal sufficiency of the evidence based on "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 MJ 324 (CMA 1987), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). After carefully reviewing all the evidence and the inferences to be drawn therefrom, we are satisfied that appellant's conviction was based upon legally sufficient evidence.

The elements of proof for the offense of communicating a "bomb hoax" are set forth in paragraph 109b(2), Part IV, Manual for Courts–Martial, United States, 1984, as follows:

(2) *Bomb hoax.*

(a) That the accused communicated or conveyed certain information;

(b) That the language or information concerned an attempt being made or to be made by means of an explosive to unlawfully kill, injure, or intimidate a person or to unlawfully damage or destroy certain property;

(c) That the information communicated by the accused was false and that the accused then knew it was false;

(d) That the communication of the information by the accused was malicious; and

(e) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Appellant judicially admitted the first three elements of the offense by his testimony that he participated in construction of the device; placed the device within view of the victim; and called the victim's attention to the device, which clearly was intended to resemble a bomb.

Nevertheless, appellant contends that the record is devoid of any evidence that his conduct was malicious. Indeed, appellant suggests that

there is no evidence in the record that the accused believed that the information he conveyed would interfere with the peaceful use of the building or that anyone would show fear or be concerned over the joke he played.

Malicious is defined in paragraph 109c(2), Manual, *supra,* as:

(2) *Malicious.* A communication is "malicious" if the accused believed that the information would probably interfere with the peaceful use of the building, vehicle, aircraft, or other property concerned, or would cause fear or concern to one or more persons.

We need not be so expansive as to hold that communication of a bomb threat to a security guard at a weapons storage area in the Federal Republic of Germany is mali-

1. The issue we agreed to consider is:
WHETHER THERE IS SUFFICIENT EVIDENCE OF RECORD AS A MATTER OF LAW TO SUPPORT APPELLANT'S CONVICTION FOR PERPETRATING A BOMB HOAX.

cious, *per se*, albeit it is difficult to envision any other reasonable inference to be drawn from this intentional and willful act. It is clear, however, from the facts and testimony before this court-martial that one reasonable inference to be drawn from the facts is that the security policeman, the victim, would at the very least be "concerned" for his safety and that of the area as the natural and probable consequence of appellant's conduct. If that were not the intention of appellant, then there would have been no purpose for the joke. Obviously, placing a device resembling a bomb in such a place is not likely to cause one to laugh.[2] It is this same evidence and the inferences to be drawn therefrom which support a finding, beyond any reasonable doubt, that such conduct is malicious as well as prejudicial to good order and discipline.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

2. In *United States v. Silver*, 196 F.Supp. 677 (E.D.Pa.1961), a prosecution arising out of 18 U.S.C. § 35, the District Court was confronted with a statement made in jest by an airline passenger to a ticket agent to the effect that he had a bomb in his briefcase. The learned Judge Harold K. Wood stated:

> There is no doubt but what the statement that he had a bomb in his brief case was made in jest, but the peculiar sense of humor attributable to this defendant does not lessen the seriousness of the legal consequences of his acts.
>
> \*   \*   \*   \*   \*   \*
>
> We cannot help but take judicial notice of similar situations elsewhere where individuals of a completely distorted sense of humor or pranksters with juvenile minds have caused expensive delays, investigations, hardships, and induced fear by such acts.

*Id.* at 678 and 679.